In re Ralph W. BOULLION, Ann Elaine Boullion, Debtors.

Ralph W. BOULLION, Ann Elaine Boullion, Plaintiffs,

v.

Franklin D. SAPP, Gail C. Sapp, Defendants.

Bankruptcy No. 90–10313FM.
Adv. No. 90–1121FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Oct. 29, 1990.

Frederick E. Walker, F.E. Walker & Associates, P.C., Austin, Tex., for defendants.

MEMORANDUM OPINION ON MODIFICATION OF 11 U.S.C. § 1322(b)(2) CLAIM PURSUANT TO 11 U.S.C. § 506

FRANK R. MONROE, Bankruptcy Judge.

On September 18, 1990, the Court heard the Motion for Default Judgment filed by Ralph W. Boullion and Ann Elaine Boullion ("Debtors") against Franklin D. Sapp and Gail C. Sapp ("Defendants"). The Defendants did not appear. Upon the evidence adduced at the hearing, the pleadings of the Debtors, the arguments of Debtors' counsel, as well as review of the cases submitted by Debtors, and its own independent research, the Court has determined that it has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (d), and 28 U.S.C. § 157(a) and (b)(1), and the standing Order of Reference in this District and that this is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Further, the Court has reached the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### Findings of Fact

1. On February 2, 1990, the Debtors, Movants herein, filed for relief under Chapter 13 of the Bankruptcy Code.

2. On March 22, 1990, Debtors filed a complaint against Franklin D. Sapp and Gail C. Sapp seeking to determine the validity, priority, or extent of a lien or other interest in property.

3. Defendants were served on March 22, 1990, with a copy of the complaint.

4. No answer or response was filed by the Defendants. The Debtors filed a Motion for Entry of Default and a Motion for Default Judgment on July 11, 1990.

5. On July 12, 1990, the Clerk's Office filed its Entry of Default.

6. The Motion for Default Judgment was heard on the merits and taken under advisement on September 18, 1990.

7. Defendants, Franklin D. Sapp and Gail C. Sapp, are the holders of a second lien on real property which is the Debtors' principal residence. The approximate amount still due on the Note to the Sapps is $2,375.82.

8. Capital Mortgage Bankers holds the first lien on the real property in the approximate amount of $68,851.86.

9. The Debtors allege that the market value of the real property is $57,976.00.

### Issue

1. May Chapter 13 debtors employ 11 U.S.C. § 506 to reduce the amount of the secured claims against Debtors' principal residence to an amount equal to its value?

### Conclusions of Law

The issue before the Court is one of first impression in this district. Although both the Third and Ninth Circuits have addressed the applicability of 11 U.S.C. § 506 to secured claims under 11 U.S.C. § 1322(b)(2) and have permitted modification of such claims, the Fifth Circuit has yet to rule on the issue. *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Hougland,* 886 F.2d 1182 (9th Cir.1989). But cf., *Justice v. Valley Nat. Bank,* 849 F.2d 1078, 1082 (8th Cir.1988).

In the only published decision to date in this circuit, Judge Abramson in the Northern District of Texas held that 11 U.S.C. § 506 may not be used to alter a claim secured by the debtors' principal residence. *In re Schum,* 112 B.R. 159 (Bankr.N.D. Tex.1990). This Court agrees.

11 U.S.C. § 506 is a statute of general applicability. The provisions of Chapter 13, on the other hand, are specific and apply only to that Chapter. 11 U.S.C. § 103(h). As such, 11 U.S.C. § 1322 governs. *Schum,* supra; *In re Sauber,* 115 B.R. 197 (Bankr.D.Minn.1990); *In re Roberts,* 99 B.R. 653 (Bankr.W.D.Pa.1989); *Matter of Lee,* 35 B.R. 452 (Bankr.N.D.Ga. 1983); *In re Young,* 10 B.R. 17 (Bankr.S.D. Cal.1980).

In pertinent part, § 1322(b)(2) provides that a plan may,

"modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property*

*that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;" (Emphasis added). 11 U.S.C. § 1322(b)(2).

This Court believes that the statute means what it says. Congress meant to establish a special protected class of creditors in a Chapter 13 case under § 1322(b)(2). *Hougland,* supra at 1185; *Wilson,* supra at 128. To read the statute other than literally, as many courts have done, is to permit inroads into a protection afforded a class of creditors by Congress. *Schum,* supra; *Sauber,* supra.

In support this Court refers to the Fifth Circuit's analysis of the legislative history behind § 1322 in *Grubbs v. Houston First American Savings Ass'n.,* 730 F.2d 236 (5th Cir.1984). *Grubbs* held that the curing of arrearages in Chapter 13 plans was not a "modification" within the definition of the statute and, thus, was not prohibited under 11 U.S.C. § 1322(b)(2) and (b)(5). In his thorough discussion of the legislative history of this statute, Judge Tate stated,

> "[t]he final amendments to H.R. 8200 and S.B. 2266 (the latter being the Senate's amended version of the House bill) were accomplished by a series of agreed-upon floor amendments in both houses, by which differences between the two versions were reconciled and compromised. With regard to § 1322(b)(2), the Senate receded from its position that no 'modification' was to be permitted of *any* mortgage secured by real estate; it instead agreed to a provision that modification was to be barred *only* as to a claim 'secured only by a security interest in real property *that is the debtor's principal residence.*' This limited bar was apparently in response to perceptions, or to suggestions advanced in the legislative hearings ... that, homemortgagor lenders, performing a valuable social service through their loans, needed special protection against modification thereof (ie., reducing installment payments, secured valuations, etc.)"

*Grubbs,* supra at 246.

Thus, in view of *Grubbs'* interpretation of the intention of Congress in enacting § 1322(b)(2), applying 11 U.S.C. § 506 to these secured claims would result in a "modification" in contravention of the clear meaning of the statute. If the Court were to permit such modification under the guise of § 506, the effect would be to,

> "treat .... real property secured by only a lien on the debtor's principal residence in the same manner as any other property secured by a lien."

*Schum,* supra at 162.

It is not this Court's function to legislate, but to apply the law as written. The Court is, therefore, in agreement that,

> "[s]uch treatment would frustrate the legislative intent of § 1322(b)(2)."

*Schum,* supra at 162.

Whether the Court examines the legislative history of the statute, the plain meaning of the statute, or the principles of statutory construction, this Court reaches the same conclusion. *Matter of Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb.1989). Application of 11 U.S.C. § 506 to reduce the dollar amount of claims secured by an interest in real property that is the debtor's principal residence under Chapter 13 would be a "modification" specifically prohibited by 11 U.S.C. § 1322(b)(2). Further, such a position would be in conflict with the Fifth Circuit's interpretation of § 1322(b)(2) in *Grubbs.* Further, in the case at bar the Defendants' secured claim would be rendered wholly unsecured if § 506 applied. Extinquishment of a secured claim is clearly a type of "modification" which Congress did not intend that debtors in Chapter 13 would be able to accomplish.

Accordingly, the Court on the evidence before it and for the foregoing reasons, concludes that the Debtors' Motion for Default Judgment must be denied on the merits. Further, since the case seeks relief which this Court has determined that it cannot give, the Plaintiff's adversary proceeding must be dismissed.

A separate Order of even date herewith will be entered by the Court.