**In re Stanley H. MITCHELL and Kathleen A. Mitchell, Debtors.**

**In re Ronald A. RAYMOND, Debtor.**

**Bankruptcy Nos. 90–11369, 90–11289.**

United States Bankruptcy Court, D. New Hampshire.

Feb. 13, 1991.

J. Roderick Falby, Jr., Brighton, Fernald, Taft and Hampsey, Peterborough, N.H., for Peterborough Sav. Bank.

Grenville Clark, Manchester, N.H., for debtors.

Lawrence Sumski, Amherst, N.H., trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The trustee brought these cases on for confirmation, and in both cases the mortgagee of the debtor's residence [1] objected. The objection is to the proposed bifurcation of the mortgagee's security interest into secured and unsecured portions based on the value of the underlying collateral [2] using sections 1322(b)(2) and section 506(a). I heard oral arguments of this issue on January 15, 1991, made a ruling then sustaining the objections, and took leave to write this opinion since it is question of first impression in this District and this Circuit.

## STATUTORY PROVISIONS

§ 1322. Contents of plan

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims

. . .

\* \* \* \* \* \*

§ 506. Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent

---

**1.** This decision only concerns the objection of a first mortgagee on the residence. Whether I would rule the same way for other creditors with a claim on the debtor's residence is a question left for another day.

**2.** The parties disagree on whether liquidation or market value should be used to value the collateral. Given my ruling that bifurcation is not permitted, I need not decide this issue.

of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

## DISCUSSION

The issue is whether the specific section 1322(b)(2) implicitly overrides the more general provisions of 506(a). More specifically, the issue is whether section 1322(b)(2) protects mortgagees to the full extent of their security interest in any proposed chapter 13 plan which is what the section appears to say, or whether one must define "secured" to mean what section 506(a) says about a secured claim only equaling the value of the collateral.

Other courts are split on this issue. Those allowing bifurcation include: *In re Hart,* 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3d Cir.1990); *In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Harris,* 94 B.R. 832 (D.N.J.1989); *In re Bellamy,* 122 B.R. 856 (Bankr.D.Conn. 1991); *In re Goins,* 119 B.R. 156 (Bankr.N.D.Ill.1990); *In re McNair,* 115 B.R. 520 (Bankr.E.D.Va.1990); *In re Gadson,* 114 B.R. 453 (Bankr.E.D.Va.1990); *In re Brouse,* 110 B.R. 539 (Bankr.D.Colo.1990); *In re Demoff,* 109 B.R. 902 (Bankr.N.D.Ind.1989); *In re Frost,* 96 B.R. 804 (Bankr.S.D.Ohio 1989).

Those courts refusing bifurcation include: *In re Russell,* 93 B.R. 703 (D.N.D.1988); *In re Moran,* 121 B.R. 879 (Bankr.E.D.Okla.1990); *In re Christiansen,* 121 B.R. 63 (Bankr.D.Colo.1990); *In re Chavez,* 117 B.R. 733 (Bankr.S.D.Fla.1990); *In re Sauber,* 115 B.R. 197 (Bankr.D.Minn.1990); *Matter of Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb.1989); *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987). See also *In re*

*Hart,* 923 F.2d 1410 (10th Cir.1991) (Brorby J., dissenting).

I believe the better reasoned cases are those holding the specific language of section 1322(b)(2) controls over the general language of 506(a). For example, Judge Ryan stated in *In re Moran, supra,* at 881–882, recently:

Some Courts have determined that when the phrase "claim secured" is utilized in § 1322(b)(2), this is translated as applying to only fully secured claims; while other Courts have determined that the term "claim" should be afforded the definition provided under 11 U.S.C. § 101(4) which includes both secured and unsecured portions of a claim. Compare *In re Hougland, supra* at p. 1182 with *In re Russell, supra* at p. 705.

In order to afford § 1322(b)(2) any relevant meaning, we must find that the "claim" referred to in this section applies to the entire claim so long as the security interest of the creditor is established in a mortgage was the Debtors' principal residence. Thus, this would include both the secured and unsecured portion of the creditor's claim. To determine otherwise would be to vitiate any protection that 1322(b)(2) is obviously intended to provide home mortgage lenders.

Also, in applying the recognized tenets of statutory construction whereby statutes of specific applicability are given precedent over those of general applicability, we find that § 1322(b)(2) which only applies to cases under Chapter 13 [see 11 U.S.C. § 103(h)] takes precedence over § 506(a) which is incorporated along with all other portions of Chapter 5 into Chapter 13 cases (see 11 U.S.C. § 103(a)). *U.S. v. Missouri Valley Construction Co.,* 741 F.2d 1542 (8th Cir. 1984). To decide this, however, we must find that these statutes are in conflict. *Aeron Marine Shipping Co. v. U.S.,* 695 F.2d 567 (D.C.Cir.1982). We so find to a limited extent. These statutes are in conflict in that § 506 attempts to invade the protection of § 1322(b)(2) under the very narrow circumstances outlined therein; however, § 506(a) is applicable in Chapter 13 pertaining to any other

secured claim which is not solely secured by the debtor's principal residence. Thus, we find that under the narrow language of § 1322(b)(2), the bifurcation theory asserted by the Debtors herein is not supported by the statutory construction afforded this Court of § 1322(b)(2).

The same conclusion was reached in *In re Russell, supra,* at 705, where the court stated:

> When two statutes conflict, as the case is here, a generally accepted tenet of statutory construction provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment. See, *Maiatico v. United States,* 302 F.2d 880, 886 (D.C.Cir.1962); *In re Brown,* 329 F.Supp. 422, 425 (S.D. Iowa 1971). This court accepts this tenet. Therefore, the specific language of § 1322(b)(2) would prevail over the general application language of § 506.

Likewise, Judge Brumbaugh stated this principle in *In re Christiansen, supra,* at 64, in a slightly different fashion as follows:

> The Bankruptcy Code on this issue is not ambiguous or complicated. Section 506 is a section generally applicable to all Debtors, whether they be in Chapter 7, 11, 12, or 13. That section allows a reclassification of a claim having property as security into a "secured" and "unsecured" portion which generally, allows a debtor to then deal with these "portions" differently. However, § 1322(b)(2) is an exception to that general code provision which prohibits the modification of the rights of holders of secured claims which are secured only by the real property that is the debtor's residence. One of the "rights" is the right of a secured creditor to attempt to "... use an appreciation in land values to offset their losses ..." at some future time. *See, In re Dewsnup,* 908 F.2d 588 (10th Cir.1990). Finally, we come to

§ 1322(b)(5), which is an exception to the exception in § 1322(b)(2). This section says that notwithstanding the prohibition on modification of the rights of a specific kind of secured creditor in § 1322(b)(2), the debtor, nevertheless, can alter those rights, but only to the extent that it is necessary to cure a default.

Although there are many cases allowing bifurcation, none answer the specific-general statutory analysis argument. Most ignore the argument without discussion.[3] The debtors in this case principally rely on the *Hougland, supra,* case which read 506(a) to modify the term "secured" claim in 1322(b)(2), and ignored the specific-general argument. Judge O'Brien provided a convincing rebuttal to that case in *In re Sauber, supra,* at 199, as follows:

> The Ninth Circuit, in *Hougland,* takes an overly technocratic approach in both analyzing the language of § 1322(b)(2) and (b)(5), and relating § 506(a) to it. Although ostensibly undertaken in search of the plain meaning of these statutes, that meaning and the proper setting of the statutes in the context of the overall scheme of the Code, is as clearly missed as the proverbial forest might be missed in examining the trees. As the *Hougland* court noted, we are not concerned with the significance of misplaced or omitted commas here, as was the Supreme Court in *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

> But what the *Hougland* court did not seem to appreciate, is that we are dealing with general and specific concepts that are intended to apply to, and govern, the rights of debtors and their creditors in different situations, and with different applications, depending upon particular Code purposes to be served. The application of general concepts is not universal in the scheme of the Code, but is subject to specific limitation, and even total disregard, in some instances. Thus,

---

3. One of the most recent decisions allowing birfucation attempted to address the issue. See *In re Bellamy, supra.* But it only gave a conclusory statement that statutes should be construed

to be consistent whenever possible. Here, however, there is an irresolvable conflict. See *In re Moran, supra.*

the general definition of "secured claim" in § 506(a), for instance, has no application to a creditor who has made an election under § 1111(b) in connection with a Chapter 11 case.

It must also be remembered that the prior Bankruptcy Act did not allow Chapter 13 debtors to modify secured claims. The legislative history is essentially silent on what was intended when Congress enacted section 1322(b)(2). This suggests Congress did not want to effect a change with respect to home mortgages. Judge Minahan in *Matter of Kaczmarczyk, supra,* at 203 stated this point well:

I conclude that § 1322(b)(2) continued the prohibition on modifying the rights of holders of claims secured by real estate, but only with respect to real estate that constitutes the debtor's principal residence. If Congress had intended to change the manner in which a claim secured by a debtor's residence would be treated under the Code it would have specifically limited § 1322(b)(2) to claims secured pursuant to § 506. However, as Congress did not explicitly change the treatment of claims secured by a mortgage on a debtor's residence, I conclude that a continuity of treatment of such claims was intended.

In making this decision, I am not unmindful of the statements made by some courts allowing bifurcation that in the ordinary home mortgage lending scenario the lender would not allow itself to be undersecured. See *In re Hougland, supra,* at 1184; *In re Frost, supra,* at 807. However, my role is not that of making policy but of construing statutes.

### Conclusion

The debtors in these chapter 13 cases are not allowed to bifurcate the security interest of a first mortgagee on residential real property into secured and unsecured portions as defined under section 506(a) for purposes of proposing a plan. The Code does not allow it.